Memorandum of Decision
This is an action by the Department of Children and Families ("DCF") to terminate the parental rights of a minor child, John, born April 22, 1994. When John was nine months old he was brought to a hospital with a head bruise and concussion. The hospital authorities contacted DCF because the child's caretaker, the mother, appeared to have been drinking. On July 17, 1995, John was committed to the care of the Commissioner upon a finding that the child had been neglected. The petitioner thereafter filed a petition to terminate the parental rights of Gloria S. and John L. The case began trial on September 8, 1998 and concluded on October 14, 1998. The respondent filed her trial brief on November 4, 1998.
The court heard testimony from three DCF social workers, the foster mother of John, a court appointed psychiatrist who evaluated the parents, a social worker case aide, a certified substance abuse counselor and a coordinator for the Healthy Families VNA program. The court has examined the more than twenty exhibits and makes the following factual findings by clear and convincing evidence.
 I. Facts
A. The Female Biological Parent
The female biological parent, hereinafter called Gloria, is now thirty-five years of age. She was born to an abusive, alcoholic father who abused her and her mother. He died several years ago. Gloria dropped out of high school in the tenth grade and was employed as a factory worker and a grocery store clerk. She has had several dysfunctional relationships with men which have resulted in the birth of children and eventual separation from the men. Each of the two children born prior to the child in CT Page 13319 this case has been removed from Gloria's care. The first child, a daughter, has been placed in the care of the child's father. The second child, a boy born with physical and mental deficiencies consistent with Fetal Alcohol syndrome, is presently in foster care. An action has been commenced to terminate that child's parent's rights. (Social Study, Exhibit #9.)
Gloria has a serious and debilitating problem with alcohol. She began using alcohol by her own account when her father gave her shots of whiskey at home when she was fourteen. In addition to what effect alcohol has played in her poor parenting and her interpersonal relationships, the use of alcohol has resulted in a history of arrests and convictions for driving while intoxicated and related offenses. Despite many efforts by the courts[2] and DCF to provide treatment and services to rehabilitate Gloria, she continues to deny that she has a problem with alcohol and insists that she can have "a few beers."
A 1993 psychological evaluation of the female biological parent by Dr. Sidney Horowitz reveals a person with poor coping skills and low self-esteem. It was stated that "individuals who respond like [Gloria] are often times described as rebellious, immature, self-centered, and impulsive. They have little regard for social standards and values and prefer to live by their own moral code which tends to be based on expediency and self-interest. They frequently have a low tolerance for frustration and will become verbally and, in some cases, physically aggressive when frustrated. They rarely tend to learn from their experience." (Exhibit #2, p. 10.)
A subsequent evaluation by a court appointed psychiatrist indicates that Gloria needs intensive residential treatment for substance abuse, with intensive follow-up counseling and regular attendance at AA. Even with this, her prognosis was guarded. Her motivation for treatment was marginal; she was in denial about the impact of alcohol on her life even though she has been hospitalized at Fairfield Hills, the Rushford Center, and the Morris Foundation as a consequence of her intoxicated episodes. (Exhibit #3.)
The Respondent's Trial Brief argues that the agency did not do enough, that DCF did lot make reasonable efforts to rehabilitate Gloria. Bessie Lee, the DCF social worker, testified o the efforts she has made to encourage Gloria to seek and participate in meaningful recovery efforts. The respondent CT Page 13320 attached to her trial brief "Exhibit A," a letter to Gloria from Bessie Lee dated March 10, 1995. In this letter the social worker indicates her frustration with Gloria and includes a list of virtually every treatment facility in Connecticut for persons similarly situated with Gloria. Gloria's alcoholism has been chronic and long-standing. DCF cannot order people into a facility. Indeed, even if they could, unless the person was ready to work toward recovery, compelling them into treatment would be futile.
The respondent believes that the entire burden of rehabilitation rests with the child protection agency. This cannot be true. The court is required by law to consider the application of the Adoption Assistance and Child Welfare Act of 1980 as part of it's mandatory findings under General Statutes § 17a-112. This Act has been supplemented by the Adoption and Safe Families Act of 1997, 42 U.S. Code 620 et seq. This new Act has been enacted to further the original goals of the 1980 act which were, and remain "to establish a permanent residence for each child in order to prevent foster care placement. In order to achieve this goal, the child and family would be offered a wide variety of services aimed at restoring family functioning and would get a permanent home through adoption for those unable to return home." U.S. Dept. of Health and Human Services, Notice of Proposed Rulemaking ("NPRM"), Federal Register, September 18, 1998. In the narrative relating to the federal law, NPRM, the Department of Health and Human Services indicates that "[a] parent must be complying with the established case plan, making significant measurable progress toward achieving the goals established in the case plan, and diligently working toward reunification in order to maintain it as the permanency plan." NPRM, p. 50072.
The court is not obligated to view the case and the reasonable efforts in terms of one or two isolated events. DCF has been involved with Gloria since 1993 when her oldest child was removed. Similarly, this child's older brother was removed in 1993. That child was diagnosed with Fetal Alcohol Syndrome. DCF's efforts to get Gloria into treatment and recovery have occurred over a five year period of time. Children in foster care should not be required to live in temporary care for large portions of their infancy waiting for their parents to rehabilitate. Foster care is not a place in which children should grow up. This court finds that parents of this child have not made genuine, sustained efforts themselves to rehabilitation. The child protection agency CT Page 13321 can only offer them assistance. If the parents are unwilling or unable to actively invest themselves in the opportunity for rehabilitation, they cannot be heard to complain that DCF did not do enough.
B. The Male Biological Parent
John L., the male biological parent, is forty-two years of age. Like Gloria, he dropped out of high school in the tenth grade; he had an earlier marriage, child, and divorce. His employment history has been sporadic, his arrest record is prodigious, and his temperament has been antisocial, hostile, aggressive, and unpredictable. These are not qualities that instill confidence in his potential as a custodial parent.
John L. met Gloria, the child's biological mother, in 1992. They have never married. The couple's relationship has been characterized as abusive and dysfunctional. The parents are frequently involved with domestic violence, separations (sometimes due to John's incarceration), and reconciliations. In March 1993, Gloria's nose was broken as a result of the battering she received from John. The Ansonia Police Department has chronicled fifty incidents of threatening and harassment involving this couple. (Exhibit #9 and the 178 documents listed by Dr. Leslie Kurt, Exhibit #4. The documented abuse and harassment by John toward Gloria represents the greatest number of incidents of domestic violence ever seen by this court.)
The social study, which was largely unchallenged by John L., indicates that John has a long history of domestic violence, violations of restraining orders, harassment, threatening, stalking, and assaulting Gloria. In addition to inflicting other injuries, he has broken her nose and her ribs. He is suspected of having been involved in the arson of Gloria's mother's apartment while Gloria lived there. He allegedly stole her food stamps.
John's arrest and convictions record goes back more than twenty years. (Exhibit #1.) John is a convicted felon with more than forty arrests. His convictions include burglary, criminal trespass violation of protective orders, harassment, criminal mischief, larceny, possession of drugs, violation of probation, reckless endangerment, possession of marijuana, possession of a controlled substance, interfering with a police officer, and breach of the peace. The record documents a lengthy history of antisocial behavior. He has frequently been incarcerated as a CT Page 13322 result of his criminal conduct.
Leslie Kurt, a psychiatrist at the Yale Psychiatric Institute in New Haven, evaluated John, prepared reports (Exhibits #3, #4), and testified in court. Dr. Kurt stated that John meets all the criteria for Antisocial Personality Disorder. Respondent Father's Exhibit # AA is a description of antisocial personality disorder from the Diagnosis and Statistical Manual-IV ("DSM-IV"). One of the features of this disorder, dominant in John, is his lack of empathy or warmth in human relationships and "a predatory and distinctly sadomasochistic quality to his interactions with others." (Exhibit #9, p. 13.)
In his court testimony, Dr. Kurt indicated that the severe personality disorder which John has cannot be treated; his prognosis is worse than others in this general category because of his recent escalation of violence. Dr. Kurt said that, in general, the use of violence diminishes with age. John's is escalating. Further, much of the aggression and violence has occurred in the presence of the family, and even though the children haven't been directly harmed, the women in his life are harmed. A child cannot feel safe and secure in this environment. Dr. Kurt concluded by saying that it is clear from the documentary evidence that John continues his antisocial behavior even under the scrutiny of the courts and DCF. "It is unlikely that he will improve when not supervised."
 II. ADJUDICATION
The court finds by clear and convincing evidence that the child has previously been adjudicated neglected on July 1, 1995 and that in the three years following that adjudication the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child, the parents could assume a responsible position in the life of the child. General Statutes § 17a-112(c)(3)(B).
This ground has existed for more than one year. The child is now developing well in foster care. The child is four years old. The foster mother has testified that she has established a loving and caring bond with the child and would adopt the child if she were permitted to do so. Neither parent can present a plan for the immediate care of the child which meets acceptable child development and child placement requirements considering their CT Page 13323 emotional and parenting deficiencies.
While Gloria represents that she has been abstinent, a fact not conclusively established, mere abstinence is not sufficient. Dr. Kurt testified that he has seen people be abstinent for twelve to eighteen months only to have them pick up again with real advancement in their illness. "The lynch-pin is rehabilitation, not abstinence," according to Dr. Kurt. Mrs. Nicolletti, qualified as an expert on substance abuse, has had Gloria in various treatment programs going back to 1991 and as recently as September 1998. She describes Gloria as uneven in her motivation and treatment history. Given her history, Gloria remains at high risk of relapse, if in fact she is presently abstinent. A newly abstinent individual needs intensive support and encouragement as indicated by the various substance abuse experts. Her risk of relapse, if she is presently abstinent, is high and her prognosis is guarded. This child cannot wait to see if Gloria is successful. In order to ensure that this child can be safe in Gloria's care, a period of considerable sobriety would be necessary to justify any confidence in a decision to return the child to her care.
The male biological parent has an emotional or mental disability that renders him unfit to parent and this disorder is untreatable. His history of domestic violence and disorder is the most severe ever seen by this court. He is an unremorseful and dangerous individual.
 III. MANDATORY FINDINGS
The court makes the following factual findings required by § 17a-112(e):
1) Appropriate and timely services were provided by the Department of Children and Families, including substance abuse and individual counseling, transportation assistance, and visitation coordination. (See Social Study, Exhibit #9, pp. 16-20.) In addition to the services offered by DCF, John was offered anger management and parenting skills training as a condition of his release from custody. The documented record of arrests, his psychiatric evaluation and his sociological history as developed by DCF social workers clearly demonstrate that whatever classes he has taken have not benefitted [benefited] him.
The court finds that neither parent has made significant, CT Page 13324 measurable progress toward attaining the early goals set out in the case plan, nor has either parent substantially complied with the court approved expectations.
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. The court finds that the father was unable or unwilling to benefit from early reunification efforts earlier due to his lack of personal initiative, and later due to his incarceration. Mother's inability or unwillingness to successfully address her personal problem with alcohol in an unequivocal and definitive fashion has prevented successful reunification efforts. A child should not be placed in a foster home indefinitely to await some future, unlikely rehabilitation of dysfunctional parents. The reasonable efforts provisions of the Adoption Assistance and Child Welfare Act of 1980 were never intended to prolong the stay of children in foster care. Indeed, the very purpose of the Act was to prevent "foster care drift."
3) The Department, with the approval of the Court, set reasonable and realistic expectations in order to reunify the family. There was only marginal compliance or participation by the parents. The parents failed to complete recommended treatment and programs immediately after commitment and the mother, likely, continues to be impaired by alcohol. Father has had continued involvement with the criminal justice system.
4) The child has strong emotional ties with the foster family who have provided the physical, emotional and educational support this child needs. The child has positive emotional ties to the biological parents but his involvement is only of a visitation nature. It is not a parent-child relationship.
5) Finding regarding the age of the child. John is now four years of age. He has been in foster care for four years. He deserves a permanent, structured, caring, nurturing environment that the foster parents are willing to permanently provide. Neither of the parents has offered the child a secure home at this time.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions, etc. The parents have not made realistic and sustained efforts to conform their conduct to acceptable parental standards. Mother requires extensive CT Page 13325 rehabilitation therapy to deal with her substance abuse difficulties. While father has been incarcerated he has taken available programs offered for his personal rehabilitation. His failure to benefit from the programs and alter his antisocial conduct eliminates him as a possible parental figure. Giving the parents additional time would not likely bring their performance, as parents, within acceptable standards sufficient to make it in the best interests of the child to be reunited. In re Luis C.,210 Conn. 157 (1989); In re Juvenile Appeal, 183 Conn. 11, 15
(1981).
7) Finding regarding the prevention of the parents from having a meaningful relationship, etc. The substance abuse, criminal behavior, and dysfunctional life-style of the parents have resulted in their present situation. The Department initially attempted to arrange visitation. No unreasonable conduct is noted.
 IV. DISPOSITION
"Our statutes and case law make it crystal clear that the determination of the child's best interests comes into play only after statutory grounds for termination of parental rights have been established by clear and convincing evidence." In re ValerieD., 223 Conn. 492, 511 (1992). Here the court has found that grounds exist to terminate the parents' rights to the child. The court has also considered the mandatory findings and concludes from the totality of circumstances that termination of parental rights is in the child's best interest. This finding is made after considering the child's sense of time, his need for a secure and permanent environment, the relationship the child has with his foster parents, and the totality of circumstances. InRe: Juvenile Appeal (Anonymous), 177 Conn. 648, 667-68 (1979). See generally, J. GOLDSTEIN, A. FREUD AND A. SOLNIT, BEYOND THE BEST INTERESTS OF THE CHILD 99 (1979).
 ORDER
It is accordingly ORDERED that the parental rights of Gloria S. and John L. are hereby terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent for the minor child. A case review shall be conducted within ninety days. A review Plan for Terminated Child shall be filed in accordance with Federal Law. The foster parent shall be given first consideration by the Commissioner with CT Page 13326 respect to possible adoptive placement.
By the court,
Francis J. Foley, Presiding Judge Child Protection Session